UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN S.,

                           Plaintiff,

                                                              1:20-CV-1468
v.                                                            (GTS)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                           Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OSBORN LAW, P.C.                            LINDSAY TRUST, ESQ.
  Counsel for Plaintiff
43 West 43rd Street, Suite 131
New York, NY 10036

SOCIAL SECURITY ADMINISTRATION             RAMI M. VANEGAS, ESQ.
OFFICE OF GENERAL COUNSEL
  Counsel for Defendant
JFK Federal Building, Suite 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by John S. ("Plaintiff") against the Acting

Commissioner of Social Security Kilolo Kijakazi ("Defendant")[1] pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2)

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 15-16.)  For the reasons set forth

_____
[1]        Defendant was sworn in as the Acting Commissioner of Social Security on July 9, 2021,
and therefore should be substituted for Andrew Saul as the defendant in the lawsuit. (Dkt. No.
16.)

below, Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed.

## I.   RELEVANT BACKGROUND

### A.   Relevant Facts

Plaintiff was born in 1966, making him 51 years old at the time he applied for Title II Disability Insurance Benefits, and 53 years old at the date of the ALJ's decision regarding his application. (Dkt. No. 15-1, at 6; T. 35, 182-83.)[2] Plaintiff alleges he is disabled due to cervical spine degenerative disc disease, thoracic spine degenerative disc disease, and lumbar spine degenerative disc disease, with a disability onset date of March 22, 2017. (Dkt. No. 15-1, at 6.)

### B.   Procedural History

On February 8, 2018, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on March 22, 2017. (T. 10, 182-83.) The claim was initially denied on April 5, 2018. (T. 10.) On April 17, 2018, Plaintiff filed a written request for hearing, and the administrative hearing occurred on October 11, 2019. (T. 10.) On January 16, 2020, Administrative Law Judge ("ALJ") David Tobias issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 7-21.) On October 1, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following eleven findings of fact and conclusions of law. (T. 10-21.)

---

[2]      The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. (T. 12.)

Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date (i.e., March 22, 2017). (T. 12.)

Third, the ALJ found that Plaintiff has the following severe impairments: cervical spine degenerative disc disease, thoracic spine degenerative disc disease, and lumbar spine degenerative disc disease. (T. 12.) More specifically, the ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform work activities as required by SSR 85-28, but that Plaintiff's bilateral plantar fasciitis was a non-severe impairment. (T. 12-13.) The ALJ found that, despite the non-severity, it should still be considered and factored into Plaintiff's residual functional capacity ("RFC"). (T. 13.)

Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 13.)

Fifth, the ALJ found that, after carefully considering the entire record, Plaintiff has the RFC to perform sedentary work with a sit/stand option, with periods of sitting limited to one hour for a total of at least 6 hours and periods of standing limited to one hour for a total of at least 2 hours in an 8-hour workday, and that Plaintiff is limited to work that does not require more than occasional overhead reaching. (T. 13.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleges, but that Plaintiff's statements concerning intensity, persistence, and limiting effects of these symptoms were inconsistent with the evidence in the record. (T. 14.) In making this determination, the ALJ recited portions of Plaintiff's testimony, Plaintiff's medical imaging and

records, and opinions provided by multiple physicians who evaluated Plaintiff and/or his medical records. (T. 14-19.) The ALJ found that Plaintiff's "activities of daily living, [and] conservative and no more than routine treatment with only over the counter medication for pain relief, indicates that [Plaintiff] is not more limited than to sedentary exertional work with the above limitations allowing [Plaintiff] to change positions in accordance with his hearing testimony." (T. 19.) The ALJ additionally found that, "as supported by the record and [Plaintiff's] hearing testimony, limiting [Plaintiff to] no more than occasional overhead reaching is warranted to accommodate radiating pain." (T. 19.)

Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 19.)

Seventh, the ALJ found that Plaintiff, who was born on October 29, 1966, was an "individual closely approaching advanced age," on the alleged disability onset date. (T. 19.)

Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (T. 20.)

Ninth, the ALJ found that Plaintiff acquired work skills from past relevant work. (T. 20.) More specifically, the ALJ highlighted the vocational expert's ("VE") testimony that Plaintiff's past relevant work as a police officer required the following skills: report writing, communication skills, and knowledge of laws and regulations. (T. 20.)

Tenth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (T. 20.) More specifically, the ALJ found that the VE's testimony (which included an opinion that an individual like Plaintiff could work as a police aide, police clerk, complaint evaluation officer, or

dispatcher – radio) was consistent with the information contained in the Dictionary of Occupational Titles. (T. 20.)

Eleventh, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 22, 2017, through the date of the decision. (T. 21.) More specifically, the ALJ found that, although Plaintiff's additional limitations do not allow Plaintiff to perform the full range of sedentary work, Plaintiff's age, education, and transferable work skills supported a finding of "not disabled" under the framework of Medical-Vocational Rule 201.15. (T. 21.)

**D.    The Parties' Briefing on Their Motions**

**1.    Plaintiff's Motion for Judgment on the Pleadings**

Generally, in his motion, Plaintiff sets forth two arguments. (Dkt. No. 15-1.)

First, Plaintiff argues that the ALJ erred by improperly evaluating his RFC. (*Id.* at 17-19.) More specifically, Plaintiff argues that, in reaching his conclusion regarding Plaintiff's RFC, the ALJ relied almost exclusively on the opinions of the State agency medical consultants (who did not examine Plaintiff and only reviewed a portion of the total medical evidence), while rejecting the opinions of a few of Plaintiff's treating physicians, including Dr. Green. (*Id.* at 18.) Plaintiff argues that, although the ALJ found Dr. Green's opinion persuasive, the ALJ failed to actually adopt a large part of it, without explanation, and that specific portion of the opinion would have precluded sedentary work. (*Id.* at 18-19.) Plaintiff argues that the ALJ relied on his own lay interpretation of the objective medical evidence to create an RFC finding, which was error under Second Circuit precedent. (*Id.* at 19.) Plaintiff additionally argues that the ALJ failed to properly assess Plaintiff's ability to perform work activities on a function-by-function basis before finding him capable of performing sedentary work. (*Id.* at 19-20.)

Second, Plaintiff argues that the ALJ erred by relying on invalid VE testimony. (*Id.* at 20.) More specifically, Plaintiff argues that writing, communicating, and knowledge—the abilities identified by the VE—are not "skills," as that term is defined in the social security context. (*Id.* at 20-21.) Plaintiff argues that these aptitudes are generic capabilities, not specific job skills directly tied to Plaintiff's former work as a police officer or a bus driver. (*Id.* at 21.) Plaintiff additionally argues that, for each occupation the VE testified Plaintiff could obtain, the positions require work processes not present in Plaintiff's former occupations, and therefore the ALJ erred in finding that Plaintiff had "transferrable skills." (*Id.*)

### 2.     Defendant's Motion for Judgment on the Pleadings

Generally, in her motion, Defendant sets forth three arguments. (Dkt. No. 16.)

First, Defendant argues that the ALJ's RFC determination is supported by evidence sufficient to convince a reasonable mind. (*Id.* at 6-10.) More specifically, Defendant argues that the ALJ's RFC determination is supported by testimony from both Plaintiff and the medical professionals who evaluated him and/or his medical records. (*Id.* at 6-8.) Defendant argues that the ALJ properly assessed the persuasive value of the various opinions, which included the opinions of Drs. Stradley and Nimmagadda, whose findings Defendant argues were not stale simply because they were not based on the entirety of the record.[3] (*Id.* at 8-9.) Defendant additionally argues that it was not improper for the ALJ to not adopt all of Dr. Green's findings after determining Dr. Green's opinion was persuasive. (*Id.* at 9.) Defendant further argues that any alleged error in the ALJ not adopting Dr. Green's opinion regarding stooping/bending, crouching, or crawling, is harmless because the potential jobs the VE identified do not require those functions. (*Id.* at 9-10.) Defendant argues that Plaintiff's argument is merely a request that

---

[3]     Defendant additionally notes that, despite finding their opinions persuasive, the ALJ assessed Plaintiff had greater limitations than these consultants did. (Dkt. No. 16, at 7.)

the Court re-weigh the evidence in his favor, which is not appropriate because substantial evidence supports the ALJ's findings. (*Id.* at 10.)

Second, Defendant argues that the ALJ's RFC determination is proper under SSR 96-8p. (*Id.* at 10-11.) Defendant argues that the Second Circuit does not require an ALJ to include an explicit function-by-function assessment in his decision. (*Id.*) Defendant argues that there is an adequate basis for meaningful review, the RFC is supported by substantial evidence, and, to the extent the ALJ erred in his assessment of Plaintiff's ability to reach overhead, bend/stoop, crouch, or crawl, such error was harmless because the jobs identified by the VE did not require those activities. (*Id.* at 11.)

Third, Defendant argues that she satisfied her burden at step five of the evaluation process. (*Id.* at 11-12.) Defendant argues that *Draegert v. Barnhart,* 311 F.3d 468 (2d Cir. 2002)—a case Plaintiff cites to support his contention that the ALJ relied on invalid VE testimony—is distinguishable from the current case. (*Id.* at 11.) More specifically, Defendant argues that, unlike the VE in *Draegert*, the VE in this case gave an "explanation as to how [Plaintiff's] abilities and aptitudes had been used in connection with [his] prior work or had been refined by occupational experience into an acquired work skill." (Dkt. No. 16 [quoting *Draegert*, 311 F.3d at 476].)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Whether the ALJ Erred by Improperly Evaluating Plaintiff's Residual Functioning Capacity

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16.) To those reasons, the Court adds the following analysis.

9

As indicated above in Part I.D.1 of this Decision and Order, Plaintiff challenges the ALJ's RFC determination on the following two grounds: (1) the ALJ erroneously examined opinion evidence by expressly or effectively rejecting opinions from a few of Plaintiff's treating physicians (including Dr. Green) and instead relied on the opinions of the State agency medical consultants and his own lay interpretation of the objective medical evidence; and (2) the ALJ failed to properly assess Plaintiff's ability to perform work activities on a function-by-function basis before finding him capable of sedentary work. (Dkt. No. 15-1, at 15-20.)

"'The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources.'" *Tenesha G. v. Comm'r of Soc. Sec.*, 20-CV-1070, 2022 WL 35998, at *3 (N.D.N.Y. Jan. 4, 2022) (Hurd, J.) (quoting *Nedzad O. v. Comm'r of Soc. Sec.*, 20-CV-1131, 2021 WL 6015004, at *5 (N.D.N.Y. Dec. 21, 2021)). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.). "The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence." *Jackson v. Comm'r of Soc. Sec.*, 14-CV-0350, 2015 WL 2356738, at *7 (N.D.N.Y. May 15, 2015) (Suddaby, C.J.).

As indicated above in Part I.C. of this Decision and Order, the ALJ found that Plaintiff has an RFC to perform sedentary work with a sit/stand option, with periods of sitting limited to one hour for a total of at least six hours and periods of standing limited to one hour for a total of at least two hours in an eight-hour workday, and that Plaintiff is limited to work that does not require more than occasional overhead reaching. (T. 13.) The ALJ supported this RFC

determination by citing Plaintiff's own testimony about his abilities, which included the following: (1) he can prepare meals and do light housekeeping, including making small household repairs (T. 16, 233-34); (2) he can go out alone, drive a car, and go shopping in stores once or twice a week for one or two hours (T. 16, 234); (3) he is able to attend family gatherings, hunt, fish, and chat on the computer, but cannot complete these actions as long or often as before his injury (T. 16-17, 234-35); and (4) he can weekly go out to dinner and attend family gatherings, movies, and concerts (T. 17, 235).

Additionally, the ALJ found the following four medical providers' opinions persuasive: (1) the opinion from Dr. Green, who evaluated Plaintiff for workers' compensation, that Plaintiff was "capable of performing sedentary and light work avoiding heavy lifting, pushing, pulling, carrying, or working above shoulder level, bending, stooping, crawling, or crouching with a weight limit of twenty pounds" (T. 17, 345-347, 353, 356, 495); (2) the opinion from Dr. Khakhar, "to the extent that [Plaintiff] is restricted in lifting and standing and sitting for prolonged periods" (T. 17, 460-62); (3) the opinions of Dr. Stradley and Dr. Nimmagadda, two State medical agency consultants, that Plaintiff is "limited to sedentary exertional level work with occasional postural maneuvers," with the ALJ qualifying these opinions by stating that "additional medical evidence . . . support[ed] additional limitations" (T. 18, 65-68, 408-09); and (4) the opinion of Dr. Speert, who completed a workers' compensation statement regarding Plaintiff's work abilities on May 28, 2019, to the extent the opinion stated that Plaintiff "could lift, carry, push and pull up to 20 pounds and occasionally perform postural movements," "could drive on an occasional basis if given frequent breaks," and "could overhead reach, [and] perform simple grasping and fine manipulation movements constantly" (T. 18, 413-14).

On the other hand, the ALJ found that Dr. Kercull's opinion, which stemmed from a workers' compensation examination on August 28, 2018, to be unpersuasive. (T. 18.) The ALJ noted that the "degree of limitation of working for four hours in an 8-hour workday [was] not supported by nor consistent with the clinical findings, [Plaintiff's] level of conservative treatment, or [Plaintiff's] reported activities of daily living." (T. 18.) Likewise, the ALJ was not persuaded by Dr. Speert's opinion from September 30, 2019. (T. 18.) In that opinion, Dr. Speert stated that Plaintiff "could occasionally lift 20 pounds, stand and walk for 2 hours in an 8-hour workday and sit for 2 hours in an 8-hour workday." (T. 18.) Dr. Speert also opined that Plaintiff should "avoid performing postural activities and . . . manipulative activities." (T. 18.) The ALJ found this opinion unpersuasive "as [to] the extreme degree of limitation [which was] not supported by the clinical findings or the conservative level of treatment," and was also "inconsistent with [Dr. Speert's] other opinions," including "treatment notes from three days prior where no restrictions to performing manipulative activities or in [Plaintiff's] ability to perform sitting and standing/walking activities are noted." (T.18.)

In addressing Plaintiff's first argument, the Court finds that the ALJ did not err in finding that certain treating physicians' opinions (or portions thereof) were unpersuasive, because (with regard to disability applications filed after March 27, 2017), the ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from [Plaintiff's] medical sources." 20 C.F.R. § 416.920c(a). Simply stated, "'[u]nder the new regulations, the treating physician rule no longer applies.'" *James W. v. Kijakazi*, 20-CV-0954, 2022 WL 685288, at *3 (N.D.N.Y. Mar. 8, 2022) (Stewart, M.J.) (quoting *Smith v. Comm'r of Soc. Sec.*, 20-CV-8547, 2022 WL 421136, at *10 (S.D.N.Y. Feb. 11, 2022)).

"The regulations, however, continue to require Defendant to consider many of the same factors previously addressed under the treating physician rule, including the supportability and consistency of an opinion with other evidence, the relationship of the medical provider with the patient, and the extent, if any, of a doctor's specialization." *James W.*, 2022 WL 685288, at *3; *Tenesha G.*, 2022 WL 35998, at *4. The new regulations prioritize the supportability and consistency factors. 20 C.F.R. § 416.920c(a); *Tenesha G.*, 2022 WL 35998, at *4.

In his decision, the ALJ addressed the supportability and consistency factors when assessing the medical providers' opinions, including the opinions of Dr. Kercull and Dr. Speert, which he found to be unpersuasive. (T. 17-18.) Dr. Kercull opined that Plaintiff was "capable of working in a clerical, administrative, sedentary and/or supervisory position four hours a day, five days a week[,] and lifting, pulling and pushing up to 25 pounds." (T. 18, 505.) In finding Dr. Kercull's opinion unpersuasive, the ALJ stated that the opinion was not supported by "[Dr. Kercull's] underlying medical examination . . . nor consistent with the clinical findings, the claimant's level of conservative treatment or the claimant's reported activities of daily living." (T. 18.) Dr. Kercull's medical report from August 28, 2018, includes the following evidence supporting the ALJ's finding that Dr. Kercull's opinion was not supported by his underlying medical examination of Plaintiff: (1) the fact that an evaluation of Plaintiff's upper extremities revealed "normal" abduction, forward flexion, and internal rotation in both shoulders (T. 504); (2) the fact that, although Plaintiff "walk[ed] slowly" and had "maximum tenderness over the L2 and L3 spinous process," he "presented to the exam without a cane, walker, crutches, or brace" and was able to "walk on his toes," "flex[] forward with fingertips reaching [his] knees" while in a standing position," and "squat down approximately halfway" (T. 505); (3) the fact that Plaintiff had "excellent strength in all muscle groups tested in a sitting position" (T. 505); and (4) the fact

that Plaintiff's "sensation [was] intact in the lower extremities" (T. 505). Likewise, Dr. Kercull's

finding of significant limitations on Plaintiff's ability to work were inconsistent with the other

medical providers' opinions in this case, therefore affecting its persuasiveness. *See Courtney

L.W. v. Comm'r of Soc. Sec.*, 20-CV-1233, 2022 WL 685290, at *4 (N.D.N.Y. Mar. 8, 2022)

(Dancks, M.J.) ("Under the consistency factor, a medical opinion or prior administrative medical

finding is 'more persuasive' if it is consistent 'with the evidence from other medical sources and

nonmedical sources in the claim.") (quoting 20 C.F.R. § 416.920c(c)(2)).

With respect to Dr. Speert's opinion from September 30, 2019, Dr. Speert stated that

Plaintiff "could occasionally lift 20 pounds, stand and walk for 2 hours in an 8-hour workday

and sit for 2 hours in an 8-hour workday," and that Plaintiff "should avoid performing postural

activities and performing manipulative activities." (T. 18, 531-32.) Dr. Speert noted that these

limitations had been present since July 15, 2019. (T. 18, 531-32.) The ALJ found this opinion

unpersuasive, stating that "the extreme degree of limitation [was] not supported by the clinical

findings or the conservative level of treatment," and that the opinion was "inconsistent with [Dr.

Speert's] other opinions . . . ." (T. 18.) Specifically, the ALJ identified Dr. Speert's opinion from

September 27, 2019—three days before the rendering of the challenged opinion—that "no

restrictions to performing manipulative activities or in the claimant's ability to perform sitting

and standing/walking activities are noted." (T. 18.) A review of Dr. Speert's evaluations on

September 27, 2019, and September 30, 2019, confirm this inconsistency and lack of

supportability. (T. 555 [showing that Dr. Speert's assessment of Plaintiff's "current work status"

on September 27, 2019, does not contain restrictions regarding sitting, standing, or

"manipulative activities"], and 531-32 [showing that Dr. Speert's assessment on September 30,

2019, does contain restrictions on sitting and standing and avoidance of "manipulative

activities," including "reach," "feel/handle," and "push/pull"].) Dr. Speert's opinion from September 30, 2019, is also inconsistent with other medical providers' opinions in this case. (T. 65 [finding that Plaintiff could "stand and/or walk (with normal breaks) for a total of . . . 2 hours" and could "sit (with normal breaks) for a total of about 6 hours in an 8-hour workday"], and 346 [including no limitation on sitting/standing].)

Further, the ALJ's reliance on the State medical agency consultants' opinions was not improper. As previously stated, although Dr. Stradley and Dr. Nimmagadda were not Plaintiff's treating physicians, this fact does not affect the weight the ALJ may give their opinions. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, 16-CV-1397, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e)). In this case, the ALJ found the State medical agency consultants' opinions persuasive, but also noted that "the additional medical evidence of record provided subsequent to their opinions support[ed] additional limitations"—a finding that adequately addressed the more-restrictive opinions of Plaintiff's treating physicians, as well as medical evidence obtained after Drs. Stradley and Nimmagadda provided their opinions. *Tenesha G.*, 2022 WL 35998, at *7-8.

For these reasons, the Court finds that Plaintiff's contentions regarding the weight given to the various medical providers' opinions is not cause for remand. *See Matta v. Astrue*, 50 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with

the record as a whole."); *Tyler M. v. Saul*, 19-CV-0426, 2020 WL 5258344, at *12 (N.D.N.Y.

Sept. 3, 2020) (Hummel, M.J.) ("Because it was an administrative finding, ALJ Draper bore the

final responsibility for determining plaintiff's RFC and she was well within her discretion to

formulate an RFC that was based upon the record as a whole, even if the RFC did not reflect any

one opinion in its entirety.").

Turning to Plaintiffs' second argument, the Court also finds that the ALJ did not err by

not including an explicit function-by-function analysis in his decision. Granted, "[b]efore an ALJ

classifies a claimant's RFC based on exertional levels of work (i.e., whether the claimant can

perform sedentary, light, medium, heavy, or very heavy work), he 'must first identify the

individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis . . . ." *Cichoki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013); *Jose R. v.*

*Kijakazi*, 20-CV-0918, 2021 WL 5826375, at *5 (N.D.N.Y. Dec. 8, 2021) (D'Agostino, J.).

These functional limitations or restrictions include physical abilities such as "sitting, standing,

walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative

or postural functions, such as reaching, handling, stooping, or crouching) . . . ." 20 C.F.R. §

404.1545(b). However, the Second Circuit has not adopted a *per se* rule that an ALJ's failure to

conduct this function-by-function analysis necessitates remand, but instead held that, "[w]here

an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions

affords an adequate basis for meaningful review, applies the proper legal standards, and is

supported by substantial evidence such that additional analysis would be unnecessary or

superfluous, . . . remand is not necessary merely because an explicit function-by-function

analysis was not performed." *Cichoki*, 729 F.3d at 177.

Here, the ALJ's RFC determination is supported by substantial evidence and affords an adequate basis for meaningful review, rendering additional analysis superfluous. *Id.* The ALJ determined that Plaintiff's RFC included a sedentary exertional level with the following three limitations: (1) periods of sitting limited to one hour for a total of at least six hours; (2) periods of standing limited to one hour for a total of at least two hours in an eight-hour workday; and (3) only occasional overhead reaching. (T. 13.)

The relevant federal regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967. "'[S]edentary work' generally involves six hours of sitting and two hours of standing or walking during [an eight-hour] workday." *Jessica J. L. v. Saul*, 18-CV-0399, 2021 WL 1405788, at *2 (W.D.N.Y. Apr. 14, 2021) (citing SSR 83-10 and SSR 96-9p); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (disagreeing with the plaintiff's argument that the six-hour sitting requirement meant that "a sedentary worker must be able to sit for six unbroken hours without standing up or shifting position during a workday"). Additionally, "[t]he SSA rulings indicate that an ability to bend at least occasionally is required for both light and sedentary work.'" *Jessica J.L.*, 2021 WL 1405788, at *2 (quoting *Acevedo v. Berryhill*, 16-CV-0769, 2017 WL 5495984, at *4 (W.D.N.Y. Nov. 16, 2017)).

A review of the record, along with the ALJ's decision, provides the requisite support for the RFC in this case. Preliminarily, Dr. Green, Dr. Stradley, and Dr. Nimmagadda opined that

Plaintiff was capable of sedentary work. (T. 18, 346, 408.)[4] Although "[i]t is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion," these findings, in conjunction with the other medical and non-medical evidence, support the ALJ's RFC determination. *Natashia R. v. Berryhill*, 17-CV-1266, 2019 WL 1260049, at *10 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.); *Redmond v. Astrue*, 07-CV-0494, 2009 WL 2383026, at *9 (N.D.N.Y. July 30, 2009) (Kahn, J.).

With respect to sitting and standing, the ALJ's limitations in the RFC are consistent with a sedentary exertional level. *Jessica J.L.*, 2021 WL 1405788, at *2. These limitations are likewise supported by substantial evidence in the record. The ALJ found Dr. Khakar's opinion from February 27, 2018, persuasive to the extent Dr. Khakar stated that Plaintiff was "unable to stand/sit for prolonged periods,"[5] and Plaintiff testified that he could stand for approximately an hour and walk anywhere from thirty minutes to an hour. (T. 17, 42, 456.)[6] Plaintiff also stated that, although he cannot stay out as long as he could before he sustained his injury, he can go out alone, drive a car, and go shopping in stores once or twice a week for one or two hours. (T. 17, 233-35.) Plaintiff stated that he can weekly go out to dinner and attend family gatherings, as well as go to movies and concerts. (T. 17; 233-35.) *See also Coger v. Comm'r of Soc. Sec.*, 335 F.

---

[4]     Dr. Kercull and Dr. Speert (in his opinion from September 27, 2019) also opined that Plaintiff could perform sedentary work. (T. 505, 555.)

[5]     *See Janet L.K. v. Saul*, 20-CV-0725, 2021 WL 2592899, at *4 (N.D.N.Y. June 24, 2021) (Suddaby, C.J.) ("The ALJ need not adopt opinions in their entirety but may instead adopt only those portions that [he] finds to be consistent with the record as a whole.").

[6]     To the extent Plaintiff's motion relies on Dr. Khakar's opinion from June 26, 2018, as support that Plaintiff could not "sit and stand for more than 30 minutes at [that] point" (Dkt. No. 15-1, at 18), the Court notes that this opinion, which would have been based on information gathered from Plaintiff, is inconsistent with Plaintiff's own testimony from the hearing on October 11, 2019—four months after Dr. Khakar provided this opinion—that he could stand for approximately an hour. (T. 43, 468.)

Supp. 3d 427, 436 (W.D.N.Y. 2018) ("While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, '[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination.") (quoting *Cahill v. Astrue*, 11-CV-0148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012)).  This testimony, along with Plaintiff's conservative treatment for his medical conditions,[7] show that the sedentary exertional level and corresponding sit/stand limitations are supported by substantial evidence.

Likewise, although Dr. Green stated that Plaintiff should avoid "working above shoulder level" and Plaintiff testified that he is limited in overhead reaching, Dr. Speert (in his opinion from May 28, 2019) found that Plaintiff was capable of "constantly" reaching overhead, and Dr. Khakar's opinion from February 27, 2018, does not include any limitation regarding overhead reaching. (T. 17-18, 43, 346, 413, 456.) The VE additionally confirmed that an individual who was "limited to no more than occasional reaching above shoulder level with either arm" was capable of sedentary work. (T. 52-53.) The Court finds that substantial evidence supports the reaching limitation found in the ALJ's RFC determination and that this limitation is consistent with a sedentary exertional level.

Although the ALJ did not include a specific limitation in the RFC with regard to lifting or bending, the medical providers' opinions, medical evidence, and Plaintiff's own testimony about these abilities are consistent with a sedentary exertional level. As stated earlier, according

---

[7]     Plaintiff testified, and his medical records support the fact, that his treatment for his back pain consisted of "injections, taking medication, [and] physical therapy for long periods of time." (T. 42.) Plaintiff further testified that, at the time of the hearing, surgery had not been suggested. (T. 43.) *See also Riley v. Barnhart*, 04-CV-1015, 2008 WL 10655336, at *8 (N.D.N.Y. Mar. 5, 2008) (Bianchini, M.J.) (finding "conservative treatment" measures, such as use of pain killers, muscle relaxers, physical therapy, and injections, to be "inconsistent with Plaintiff's claims of totally debilitating pain").

to the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967. Additionally, the "SSA rulings indicate that an ability to bend at least occasionally is required for both light and sedentary work." *Jessica J.L.*, 2021 WL 1405788, at *2. Dr. Khakar opined that Plaintiff should not "push[], pull[], *lift*[], or *bend*[] *more than 10 pounds*," and Dr. Speert (in his opinion from May 28, 2019) opined that Plaintiff could occasionally "lift, carry, push and pull *up to 20 pounds* . . . ." (T. 17-8, 413, 456 [emphasis added].)[8] Dr. Green also opined that Plaintiff should avoid "heavy *lifting*, pushing, pulling, carrying or working above shoulder level, *bending*, stooping, crawling or crouching with a *weight limit of 20 pounds*." (T. 17, 346 [emphasis added].)[9] Plaintiff likewise testified that he was capable of lifting "about 20 pounds," and although he stated that bending was "difficult," he did not testify that he was unable to do so. (T. 42, 44.) The Court finds the medical opinions, corresponding medical evidence, and Plaintiff's testimony regarding lifting and bending are consistent with a sedentary exertional level. *See My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 106 (W.D.N.Y. 2021) ("The exertional limitations assessed by Drs. Dave and Koenig are fully accounted for by the RFC, which requires that Plaintiff perform sedentary work."); *Searles v. Comm'r of Soc. Sec.*, 14-CV-1124, 2015 WL 9582726, at *5 (N.D.N.Y. Nov. 30, 2015) (Dancks, M.J.); *Caridad H v. Comm'r of Soc. Sec.*, 18-CV-0893, 2019 WL 3253228, at *4-5 (N.D.N.Y. July 19, 2019) (Dancks, M.J.).

---

[8]     Dr. Speert's opinion from September 27, 2019, includes the same limitations regarding lifting and bending with a weight limit of 20 pounds. (T. 18, 555.)

[9]     Dr. Kercull's opinion, which the ALJ found unpersuasive, also included the following statement: "Lifting, pulling, and pushing limited to 25 pounds." (T. 18, 505.)

To the extent Plaintiff challenges the ALJ's failure to specifically assess other functions, including stooping, crouching, or crawling (Dkt. No. 15-1, at 19), the Court agrees with Defendant that any such error is harmless. (Dkt. No. 16, at 7-9.) The Court recognizes that the ALJ found Dr. Green's opinion persuasive, which included a finding that Plaintiff should avoid "bending, stooping, crawling, or crouching . . . ." (T. 17.) The ALJ's failure to include limitations regarding these functions in his RFC determination is harmless error because inclusion of these limitations would not have changed the ALJ's Step Five determination. *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 589 (W.D.N.Y. 2018); *Cutillo v. Berryhill*, 17-CV-0609, 2018 WL 3752871, at *5 (N.D.N.Y. Aug. 8, 2018); *Mosley v. Comm'r of Soc. Sec.*, 17-CV-6800, 2019 WL 2491664, at *4-5 (W.D.N.Y. June 14, 2019).

In *Ortiz v. Colvin*, for example, the plaintiff challenged the ALJ's RFC decision because the "ALJ failed to incorporate all of the limitations assessed by [a medical provider] into his RFC finding, despite giving that opinion 'great weight.'" *Ortiz*, 298 F. Supp. 3d at 589. The district court found that "the ALJ's failure to include the assessed environmental limitations in his RFC finding was harmless error," because the "limitations imposed by [the medical provider] would not have changed the ALJ's step five determination." *Id.* at 590. In so finding, the court relied on VE testimony that the plaintiff could perform two jobs that, according to the Dictionary of Occupational Titles ("DOT"), would not expose the plaintiff to the limitations imposed by the medical provider. *Id.*

At the hearing, the VE testified that an individual with Plaintiff's age, education, work background, and RFC would "rule out" Plaintiff's past jobs, but that he would be able to perform the positions of police aide (DOT 243.362-014), police clerk (DOT 375.362-010), complaint evaluation officer (DOT 379.362-010), and police dispatcher – radio (DOT 379.362-010). (T.

48-50.) According to the DOT, the positions identified by the VE do not require these types of movements. *See* Police Aide, DICOT 243.362-014, 1991 WL 672264 (showing no requirement for "climbing, balancing, stooping, kneeling, crouching, and crawling"); Police Clerk, DICOT 375.362-010, 1991 WL 673156 (same); Complaint Evaluation Officer, DICOT 375.367-014, 1991 WL 673159 (same); Dispatcher, Radio, DICOT 379.362-010, 1991 WL 673239 (same). Accordingly, the Court finds that any failure to assess functions such as stooping, crouching, and crawling, does not require remand. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary, however, '[w]here application of the correct legal standard could lead to only one conclusion.'") (quoting *Schaal v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998)).

Ultimately, "Plaintiff is essentially arguing that evidence in the record supports [his] contention. However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [his] position." *Z.J.F by Conkling*, 2018 WL 1115516, at *6. Rather, "Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*

For all the reasons stated above, the Court finds the ALJ's RFC determination is supported by substantial evidence, and therefore is not subject to remand. *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) ("'The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review.'") (quoting *Valente v. Sec. of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 2014)).

### B.    Whether the ALJ Erred in Relying on Invalid Vocational Expert's Testimony

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16.) To those reasons, the Court adds the following analysis.

Plaintiff argues that the ALJ erred by relying on invalid VE testimony regarding Plaintiff's transferable skills of "report writing, communication . . . and knowledge of laws and regulations," because these are "not specific job skills directly tied to the work of a police officer or bus driver, but rather [are] traits (aptitudes or abilities)." (Dkt. No. 15-1, at 20-21; T. 20.) In support of this argument, Plaintiff relies solely on *Draegert v. Barnhart*, 311 F.3d 468 (2d Cir. 2002). (*Id.*) In *Draegert*, the Second Circuit specifically addressed the difference between a plaintiff's transferable skills and general aptitudes. *Draegert*, 311 F.3d at 473-76. The Second Circuit highlighted that, in this context, a "skill" is defined as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Id.* at 473. In contrast, the Second Circuit stated that "an aptitude" is "an inclination, a natural ability, talent, or capacity for learning." *Id.* at 475.

In this case, in response to the question, "Do any of [Plaintiff's past] jobs carry transferrable skills to sedentary work," the VE testified as follows: "The only one – just a couple from the police officer job, and certainly with that many years working in the department would lend itself the experience to both a police clerk and/or a police aide." (T. 48.) The VE explained that "the report writing [and] the effective communication skills[,] with the working knowledge of law and the regulations[,] would easily transfer to both the police aide and the police clerk [roles]." (T. 48.) The VE testified that complaint evaluation officer and police dispatcher were also "viable" occupations and explained that a complaint evaluation officer is "the person who's

answering the phone . . . if you don't call 911" and is "the one who's evaluating the nature of the emergency of the call . . . ." (T. 49.) The VE testified that the previously identified skills also applied to the roles of complaint evaluation officer and police dispatcher. (T. 50 ["I think . . . any skills acquired from that length of employment [as a police officer], they would be easily transferred to any of the four titles."].) When describing his role as a police officer, Plaintiff stated that he was responsible for "enforce[ing] the laws, rules, and regulations," affecting arrest, and also worked in "crime prevention" later in his career. (T. 39.)

Relying on this testimony, the ALJ found that Plaintiff had "acquired work skills from past relevant work" as a "police officer (DOT #375.263-014, SVP 6) medium exertional level, performed at heavy [and] skilled with a specific vocational preparation (SVP) code of 6," and identified Plaintiff's transferrable skills as "report writing, communication skills, and knowledge of laws and regulations." (T. 20.) The ALJ likewise adopted the VE's testimony that Plaintiff could perform the role of police aide, police clerk, complaint evaluation officer, and dispatcher – radio. (T. 20.)

The Court agrees with Plaintiff that, in this case, "communication skills" is an aptitude, rather than a skill. As the court in *Higgs-Wilson v. Saul* found,

> [The skill of communication] may or may not be [a] transferable skill[], depending on whether [it] appl[ies] to specific, industry-related contexts. So the ability to communicate and interact well with others might be a transferable skill but only if it has a link to a specific work-related activity. As vaguely presented in the VE's testimony and the ALJ's decision here, however, skills such as 'communication and interacting with others,' etc., cannot be categorized as anything more than general aptitudes. And that simply is not good enough.

17-CV-0768, 2019 WL 2537296, at *6 (W.D.N.Y. June 20, 2019); *Biernacki v. Colvin*, 15-CV-0331, 2016 WL 4925850, at *5 (W.D.N.Y. Sept. 16, 2016) (finding "receptive and expressive

communication" to be a "trait or aptitude [that] was far too vague to constitute a skill"); *Gittens v. Astrue*, 07-CV-1397, 2008 WL 2787723, at *8 (S.D.N.Y. June 23, 2008) ("Communication is certainly an ability or attribute as it is 'too vague to constitute a particular skill which is transferable.'") (quoting *Draegert*, 311 F.3d at 475).

With respect to "report writing" and "knowledge of laws and regulations," however, the ALJ did not err in finding that these attributes constitute transferrable skills. These skills are "not innate attributes, but rather skills learned by plaintiff in the course of his job as a police officer." *Gittens*, 2008 WL 2787723, at *8 (finding "knowledge and experience of routines of a complex investigation" and "ability to compute and develop reports" were transferable skills learned by the plaintiff from his role as a police officer and transferrable to the jobs of fraud investigator and emergency dispatcher); *Johnson v. Kijakazi*, 20-CV-2630, 2021 WL 5513491, at *16 (S.D.N.Y. Nov. 24, 2021) (finding "brief report writing skills, learned as a New York City police officer" was not a "trait or aptitude," but rather a skill the ALJ could rely on in "determin[ing] that plaintiff had the transferable skills to perform the job of information clerk"); *Martin v. Colvin*, 13-CV-2827, 2014 WL 4467709, at *7 (S.D.N.Y. Sept. 10, 2014) (reciting VE's conclusion that the plaintiff's experience as a detective and that it "gave him many transferable skills, such as: knowledge of the law . . . ."); *Blundo v. Sullivan*, 90-CV-3781, 1992 WL 390237, at *3 (E.D.N.Y. Dec. 8, 1992) (reciting VE's conclusion that the plaintiff's experience as a police officer and the transferrable skills that role provided him, including "knowledge of the law and investigative procedures" and "report writing").[10]

---

[10]     *Cf. Hy v. Astrue*, 11-CV-1075, 2013 WL 1337264, at *3 (W.D.N.Y. Mar. 29, 2013) (finding the plaintiff, who previously worked as a plumber, had the transferable skill of "knowledge of product[s]").

Plaintiff also argues that, "[i]n order to find Mr. [S.] has transferable skills, 'there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry,' pursuant to the Medical Vocational Guidelines." (Dkt. No. 15-1, at 21.) Plaintiff argues that, because the jobs identified by the VE required "more than 'very little, if any' vocational adjustment," the ALJ erred in finding that Plaintiff had transferable skills. The portion of the Medical Vocational Guidelines that Plaintiff relies upon in making this argument, however, specifically states that it applies to "skilled sedentary work for individuals *who are of advanced age (55 and over)* . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 2 (emphasis added). On the alleged onset date (i.e., March 22, 2017), Plaintiff was 51 years old, making him 53 years old at the time of the ALJ's decision. (Dkt. No. 15-1, at 21; T. 10, 19.) Plaintiff's age places him in the category of "an individual closely approaching advanced age," not an individual of "advanced age"—a finding highlighted in the ALJ's decision. (Dkt. No. 15-1, at 21; T. 19.) *Cf. Brown v. Colvin,* 146 F. Supp. 3d 489, 491 (W.D.N.Y. 2015) (stating that the ALJ "incorrectly asserted" that the plaintiff, who was fifty-one years old at the alleged onset date, was "an individual of advanced age"). Accordingly, the Court finds that the provision Plaintiff cites did not apply to him at the time of the ALJ's decision and therefore did not present an issue for the ALJ to resolve.

For all these reasons, the Court finds the Plaintiff's arguments regarding transferrable skills are without merit and are not bases for remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 23, 2022
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

27